IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHARLES CHISLER,

        Plaintiff,

v.

SGT. EDWARD P. JOHNSTON, in his
individual capacity, et al.

        Defendants.

Civil Action No. 2:09-cv-1282

Judge Nora Barry Fischer

**JURY TRIAL DEMANDED**

## MOTION TO COMPEL

Plaintiff, Charles Chisler, by and through his attorneys Feldstein Grinberg Stein & McKee and Barbara M. Wolvovitz, Esq., hereby make this Motion to Compel Disclosure pursuant to Rule 37 of the Federal Rules of Civil Procedure from the Department of Corrections ("DOC") relating to incidents of "workplace violence", "horseplay" or other inappropriate contact and behavior among Corrections Officers, as more fully defined below, at correctional institutions other than SCI-Fayette, as follows:

    1.    Plaintiff has brought this suit alleging an informal custom and policy at SCI-Fayette of workplace violence, horseplay, hazing or any other descriptive term to describe the category of conduct in which Corrections Officers handcuff each other, hog-tie each other, duct tape each other to chairs and push them down stairs, and other similar conduct. For the purposes of this Motion, Plaintiff will utilize the terms "horseplay" or "workplace violence" to encompass all of this type of conduct and the definition in Section II of the Department of Corrections' Human Resources & Labor Relations Procedures Manual defines Workplace Violence as follows: Violence connected to the workplace takes many forms. Incidents of workplace violence include,

{00442520.1}

but are not limited to, threats in person, by letter or note, telephone, fax, or electronic mail; intimidation, harassment to include sexual harassment, mugging, robbery, physical assault, and destruction of Commonwealth property.... Incidents of workplace violence may occur either at or away from the workplace. The determining factors in assessing whether an incident constitutes workplace violence are the individuals involved and the relationship of the action to the workplace; the location of the incident; and/or if the violence is as a result of Commonwealth business. Plaintiff alleges that a result of this informal custom and policy, on October 7, 2007 he was handcuffed, hog-tied, punched and kicked as a consequence of this informal custom and policy and thereby had his civil rights violated.

2. Discovery documents that have been produced to date by the DOC regarding policies covering such conduct demonstrates that the policies are system wide, meaning that all of the state correctional institutions are covered by the same policies. Exhibit #1A, B and C are copies of the relevant policies that have been produced to date.

3. The testimony of Defendants already deposed as well as non-party witnesses illustrates that the informal custom of this conduct takes place not only at SCI-Fayette, other state correctional institutions but also at the DOC's Training Academy.

4. Defendant Wentroble testified that horseplay, officers cuffing each other or wrestling around occurs on a frequent basis. Exhibit #2, Wentroble Deposition, p. 50. On one occasion Wentroble cuffed a sergeant at SCI-Pittsburgh in the bubble in the RHU (Restricted Housing Unit). Exhibit #2, Wentroble Deposition, p. 53.

5. Defendant Wentroble testified that when at SCI-Pittsburgh, he was handcuffed by a block sergeant, and that he had handcuffed a sergeant in the bubble in the RHU (Restricted Housing Unit). The COs would cuff guys and put them in dead cells, empty cells. Exhibit #2, Wentroble Deposition, pp. 51, 53.

6. Wentroble further testified that this "horseplay" served an essential function on the job: It helped develop basic camaraderie on the job...and made Corrections Officers think alike and have the same spirit. Exhibit #2, Wentroble Deposition, p. 52.

7. At SCI-Fayette, Wentroble recalled Corrections Officers telling him, "We cuffed this guy today." "We got him today during our count time." "Taped him to a chair during count." Exhibit #2, Wentroble Deposition, p. 54.

8. Wentroble describes hearing Lieutenants and Captains discuss instances of "horseplay" at SCI-Fayette, SCI-Pittsburgh and SCI-Greene. Exhibit #2, Wentroble Deposition, pp. 59-60.

9. Wentroble's definition of horseplay could include punching and kicking and hog-tying a Corrections Officer. Exhibit #2, Wentroble Deposition, pp. 60-61. Furthermore, he did not consider horseplay against the formal rules of the institution and believed that this type of conduct was known, among all Officers. Exhibit #2, Wentroble Deposition, pp. 58-59, 104.

10. Wentroble, having been recently promoted to Lieutenant, further testified that as a Lieutenant if he observed "horseplay" he should have said "Hey, don't do that in front of me." He does not testify that he should tell the participants to stop, Exhibit #2, Wentroble Deposition, pp. 69, 70.

11.     Sergeant Braunlich, a non-party and a Union Steward, testified that he knew of an incident at SCI-Pittsburgh in which Officers were actually fist-fighting and did not receive significant discipline.  Exhibit #3, Braunlich Deposition, pp. 30-31.

12.     Braunlich agreed with Wentroble that horseplay helps Corrections Officers bond as a group so that they know that fellow Officers will watch their back.  Exhibit #3, Braunlich Deposition, p. 47.

13.     All COs, COTs and CO1s experience horseplay according to Sergeant Braunlich.  Exhibit #3, Braunlich Deposition, p. 51.

14.     Defendant Johnston testified that SCI-Fayette is "like a city inside 68 acres," with its own "unwritten rules."  Exhibit #4, Johnston Deposition, p. 29.  Johnston referred to Officers joking around and doing things such as tying guys to doors; or tying them with bed sheets and testified that this has been happening since he began with the DOC in 1993.  He also testified that he hears about conduct of this nature taking place approximately once a week.  Exhibit #4, Johnston Deposition, p. 30.

15.     Johnston's understanding of horseplay would include COs wrestling with each other and cuffing each other.  He has seen everybody participate in horseplay, including Captains and Lieutenants.  Exhibit #4, Johnston Deposition, pp. 48-52.

19.     Although Johnston was reluctant to name particular Captains and Lieutenants because it would be seen as snitching, he had knowledge of the following Officers as having engaged in "horseplay": Lt. Mazingo who now works in Pittsburgh; Lt. Powley; Lt. Ansel and Capt. Manchas (Manchas was not a Captain at the time of the horseplay.) (Lts. Mazingo, Powley and Ansel were Lieutenants at the time of the "horseplay".)  Exhibit #4, Johnston Deposition, pp. 48-52.

16. Johnston's personal knowledge included the fact that Lt. Mazingo had taped him to a chair. Exhibit #4, Johnston Deposition, p. 51.

17. Johnston identified a number of incidents that took place in the 1990s and when asked about incidents after 2000 he identified Lt. Raposky and Lt. Tift as Officers who had participated in "horseplay". He testified that he could go on and on and couldn't remember everything and because there were so many instances that he couldn't really give specifics. Exhibit #4, Johnston Deposition, pp. 52-53.

18. Johnston would consider hog-tying a Corrections Officer horseplay. Exhibit #4, Johnston Deposition, p. 53.

19. Both Johnston and Wentroble had never heard of any discipline resulting from or an investigation being conducted as a result of "horseplay." Exhibit #2, Wentroble Deposition, p. 119, Exhibit #4, Johnston Deposition, p. 56.

20. Johnston testified that there was a custom of horseplay not only at SCI-Fayette, but also at Waynesburg, Graterford, Pittsburgh and Greene. Exhibit #4, Johnston Deposition, p. 146-147.

21. Plaintiff recounted learning of a Corrections Officer who was duct taped to a chair and then pushed down the stairs in the RHU at SCI-Fayette. Exhibit #5, Chisler Deposition, pp. 208-09, 264-66, 268.

22. Security Capt. Manchas testified that when he and a couple of other Officers were up at the Academy and were off duty that they began "wrestling around." Exhibit #6, Manchas Deposition, p. 56.

23. Mark Kresho, Director of Training for the Department of Corrections, testified that he had heard of horseplay incidents during the fourteen (14) years that he

has been with the Department of Corrections, but could not remember anything specific. Exhibit #7, Kresho Deposition, p. 106.

24.  Kresho testified that he did not believe that there had been any incidents at the Training Academy since he became Director in the past two and one-half (2½) years because the instructors should be behaving in a professional manner. This testimony was modified when he stated, "If they do it on their own among instructors, no harm done. It is among friends and stuff like that." Exhibit #7, Kresho Deposition, p. 107. Thus, Corrections Officer Trainees learn from the beginning, at the Academy, that "horseplay", is perfectly acceptable so long as it is outside of classes. According to the Director of Training there is "no harm".

25.  SCI-Fayette became operational in September, 2003. Six (6) of the eight (8) Defendants worked at other institutions prior to coming to SCI-Fayette: Greene Waynesburg, Forest, Cresson, Greensburg, Pittsburgh, Camp Hill, Somerset and Graterford. Thus, for the six Defendants who had previously worked at other institutions, incidents of workplace violence taking place at those institutions particularly, and certainly with respect to those Defendants, are relevant to their understanding of the informal customs and policies of the Department of Corrections.

26.  In addition, the testimony referenced above indicates many officers currently at SCI-Fayette engaged in "horseplay" not only at SCI-Fayette but when they worked at other institutions and at the Academy. It is very difficult to parse out what behavior may have been learned at what institution since the testimony to date indicates that the custom at all institutions with respect to this was the same, thus impacting any custom or policy at SCI-Fayette.

27.     Furthermore, to the extent that the formal policies of the Department of Corrections are the same across all facilities, the rules governing responses to violations of such policies should be uniform among the institutions as well.  Therefore, the issue is not only the incidents of "horseplay" or "work place violence" at SCI-Fayette, but the action taken by the Department of Corrections in response to such conduct.

28.     If the Department of Corrections took action with respect to incidents of work place violence at one facility, that response could lead to relevant evidence with respect to whether SCI-Fayette took appropriate action.

29.     The DOC argues that incidents of work place violence, that are not similar to the one in the case at bar, need not be produced because they could not lead to relevant evidence.

30.     However, those incidents can lead to relevant evidence with respect to a custom and policy at the institution.  Although they may have occurred for a different reason, i.e., domestic violence, the response of the DOC to the allegation of work place violence, etc., irrespective of the specifics of the incident, is significant and relevant to the case at bar.

WHEREFORE, Plaintiff respectfully requests that this Court order the Department of Corrections to produce all reports of incidents of work place violence that are centrally maintained with respect to all correctional facilities.

Respectfully submitted,

FELDSTEIN GRINBERG STEIN & McKEE

By: /s/Barbara M. Wolvovitz

Gary M. Lang (PA I.D. #32192)
Barbara M. Wolvovitz (PA I.D.   #42833)
FELDSTEIN GRINBERG STEIN & McKEE
428 Boulevard of the Allies
Pittsburgh, PA  15219
(412) 471-0677
(412) 263-6126 (Fax)