# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES CHISLER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Civil No. 09-1282 |
| | ) Judge Nora Barry Fischer |
| SGT. EDWARD P. JOHNSTON, in his individual capacity, *et al.*, | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

### I. INTRODUCTION

Charles Chisler ("Chisler") initially filed the pending motion to compel production of certain documents against the Pennsylvania Department of Corrections ("DOC") on April 7, 2011. (*See* Docket No. 138). At oral arguments on May 3, 2011, Chisler orally moved to withdraw his motion to compel, and the motion to compel was withdrawn on May 4, 2011. (*See* Docket No. 150). Pursuant to a Consent Order filed May 24, 2011, (*see* Docket No. 158), the motion to compel was reopened by the Court. The Consent Order limited arguments on the motion to compel to those already made by the parties. (*See id.*). The motion is therefore ripe. Based on the following discussion, Chisler's "Motion to Compel Production of a Copy of Certain Documents Produced by the Dept. of Corrections with Limited Redactions" (Docket No. [138]) is GRANTED, with the limitations set forth below.

### II. FACTUAL BACKGROUND

Chisler brings this action pursuant to 42 U.S.C. § 1983 against several current and former employees of the DOC. (Docket No. 21 at ¶ 5). On October 7, 2007, Chisler was employed as a

1

Corrections Officer Trainee ("COT") at SCI-Fayette. (*Id.* at ¶ 2). Because Chisler was still in his first year of employment, he was required to receive regular training from various superior officers, including Defendant Sergeant Edward Johnston ("Johnston"). (*Id.*). Chisler alleges that, during this required "training," Defendants Johnston, Lieutenant Timothy Wentroble ("Wentroble"), Sergeant Clayton Stoner ("Stoner"), and Corrections Officer ("CO") Erik Keller ("Keller") "violently attacked and hog-tied" Chisler. (*Id.* at ¶ 3). Chisler claims that Defendants' conduct violated his civil rights and caused him severe and permanent injuries, pain, and psychological and emotional injuries. (*Id.*).

Chisler also claims that Defendants Lieutenant Howard Sutton ("Sutton"), Lieutenant Donald Hockenberry ("Hockenberry"), Sergeant Daniel Lynch ("Lynch"), and Sergeant Joseph Palanchar ("Palanchar") (all together "Supervisory Defendants") were aware of the "assault" on Chisler. (*Id.* at ¶ 4). Chisler claims that the Supervisory Defendants threatened him with punishment and "loss of his career" if Chisler filed a truthful incident report of the attack. (*Id.*).

During discovery, on November 22, 2010, the Court ordered the DOC to produce documents responsive to Chisler's requests for information relating to "incidents of workplace violence, horseplay, hazing or other inappropriate contact and behavior" at several state correctional institutions. (Docket No. 118). The Court based this order on its finding that "individual Defendants worked at state correctional facilities other than SCI-Fayette…", (*Id.* at 4 n.7), and that Chisler had alleged that the claimed custom of hazing and violence occurred at all of the state's correctional institutions. (*See id.* at 3).

After the parties conferred on December 1, 2010, they entered into an agreement for preliminary production of DOC documents. (Docket No. 121). The agreement made clear that documents would be produced subject to "attorneys eyes only" protection, a confidentiality

agreement, and a clawback agreement. (*See* Docket No. 140 at 4-5). The DOC then released a multitude of responsive documents, but asserted the government documents and deliberative process privileges over all or large portions of many of the documents. (*Id.* at 5; *see also* Docket No. 138-1)).

In his instant motion, (Docket No. 138), Chisler seeks to compel production of the executive summary and investigative file for the DOC's Office of Professional Responsibility ("OPR") investigation of the suicide of COT A.H., who was stationed at SCI-Graterford. (Docket No. 139 at 2). Chisler claims that the OPR conducted an investigation in which twenty-one (21) employees were interviewed and a report of approximately one hundred and ninety (190) pages was produced. (*Id.*).

Chisler claims that the document he seeks to have produced will prove valuable in establishing that there is an "informal custom and policy permitting horseplay/workplace violence," (Docket No. 138 at ¶ 2), and that the requested documents are "relevant and significant to the case at bar." (*Id.* at ¶ 15). The DOC claims that the documents are not only irrelevant, but also subject to the "government document" and deliberative process privileges. (Docket No. 140 at 6).

The Court has reviewed the requested report *in camera*. The manner in which the Court came into possession of the report is worthy of note. The report was filed by Chisler, unsealed, as an appendix to the present motion. (*See* Docket No. 138-2). The DOC moved for sanctions based on the disclosure of this document, which was subject to the "attorneys eyes only" and confidentiality restrictions. (*See* Docket No. 141 at ¶ 19; Docket No. 138-2 (showing the document with a "Confidential – Attorneys Eyes Only" stamp)). Consequently, the Court reviewed the document when it was filed with the present motion.

3

## III. LEGAL STANDARD AND ANALYSIS

Rule 26 describes the scope of discovery as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

FED.R.CIV.P. 26(b)(1).

"Although the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999) (citing *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1322 (Fed. Cir. 1990)). This Rule places two relevant limitations upon the instant motion: privilege and relevance. A party may "obtain discovery regarding *any nonprivileged* matter that is *relevant* to any party's claim…" FED.R.CIV.P. 26(b)(1) (emphasis added).

### a. Relevant Information

"Relevant evidence" means "anything having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence." FED.R.EVID. 401. The scope of this language is intended to be broad. *See Moyer v. United Dominion Industries, Inc.*, 473 F.3d 532, 542 (3d Cir. 2007); *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 922 (3d Cir. 1985). Generally, relevant evidence is admissible. FED.R.EVID, 402. However, "[r]elevant information need not be admissible at the trial if the discovery appears *reasonably calculated to lead to the discovery of admissible evidence*." FED.R.CIV.P. 26(b)(1) (emphasis added).

4

Because the scope of relevance is rather broad, *see Moyer*, 473 F.3d at 542, this Court is inclined to find that the report requested by Chisler are relevant. Several of Chisler's claims rely upon a custom, practice, or policy of violence in state correctional institutions. (*See* Docket No. 21 at 16, 18, 19). He claims that these customs or practices occur on a state-wide basis. (*See* Docket Nos. 118 at 3; 114-2). Resolution of this action is thus dependent upon Chisler's ability to show that this custom, practice, or policy existed at a state-wide level.

The factual information contained in the requested report appears likely to make Chisler's claim of a "custom and practice of violence" in the State Corrections Institute "more probable or less probable," and it should thus be deemed relevant. *See* FED.R.EVID. 401. Although the events described in the report occurred after the events alleged by Chisler, both the initial actions of the COs and the response or lack thereof by DOC authorities could be probative as to the existence of a custom, practice, or policy of workplace violence. It is therefore difficult to characterize the report as anything other than relevant.

Further, the Court has previously ordered the DOC to produce documents regarding hazing at several of its facilities. (*See* Docket No. 118). As the Court is aware, having reviewed the document *in camera*, the requested file tends to indicate that hazing is condoned in at least one of the DOC's facilities. The Court has already declared such information relevant. (*Id.* at 3). The Court has not been made aware of any reason why it should now find this information to be irrelevant.

It should be noted at this point that Federal Rule of Evidence 403[1] is irrelevant for the present analysis. Although district courts must "articulat[e] a balance between the probative

---

[1] FED.R.EVID. 403 states:

5

value and the prejudicial effect of the evidence as required by [Rule 403] and the jurisprudence of [the United States Court of Appeals for the Third Circuit]" to determine admissibility, *Glass v. Philadelphia Elec. Co.*, 34 F.3d 188, 191 (3d Cir. 1994) (Alito, J.), the instant question is not one of admissibility, but of production. Parties may obtain discovery pertaining to any relevant information, even if that information is not admissible at trial. *See* FED.R.CIV.P. 26(b)(1). The Court has therefore made no decisions with respect to Rule 403.

### b. Privilege

Courts have long recognized the right of government officials to invoke a variety of privileges, all of which fall under the broader heading of "executive privilege." *In re Sealed Case*, 121 F.3d 729, 736 (D.C. Cir. 1997). These privileges enable agencies to resist disclosure of documents the confidentiality of which the agency feels is crucial to the fulfillment of the agency's unique responsibilities. *Id.* at 736. The DOC has invoked two subsidiary privileges to the broader executive privilege: what the DOC refers to as the "government documents" privilege, and the deliberative process privilege.

### i. Invocation

The requirements for invoking these privileges are the same. The government documents privilege invoked by the DOC under *United States v. Reynolds*, 345 U.S. 1 (1953) requires "a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." *Reynolds*, 345 U.S. at 7-8.

---

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

> "The essential matter is that the decision to object should be taken by the minister who is the political head of the department, and that he should have seen and considered the contents of the documents and himself have formed the view that on grounds of public interest they ought not to be produced."

345 U.S. at 8 n.20 (citation omitted). In the Third Circuit, these requirements have been extended to the invocation of other forms of executive privilege. *See U.S. v. O'Neill*, 619 F.2d 222, 226 (3d Cir. 1980).

The Court is satisfied that the privileges have been properly invoked. John Wetzel has claimed that he is the head of the Department of Corrections. (*See* Docket No. 140-2, ¶ 1). He has likewise adequately described the requested reports and stated that he has personally reviewed the requested files. (*Id.* at ¶¶5-6). Finally, he asserts that:

> A danger exists in disclosing the investigative records, which will compromise security and interfere with the ability of my staff and administration to effectively administer the correctional institutions under our control. Release of an unredacted copy of the investigative file and executive summary will unnecessarily chill the free and uninhibited exchange of ideas between staff in the OSII office and their supervising Director. It will also interfere with my ability to collect the information necessary from the OSII office in determining the completeness and effectiveness of OSII investigation and in determining whether discipline for any wrong-doing is appropriate. Finally, release of such files will necessary [sic] deter witnesses from providing information to OSII officers.

(*Id.* at ¶ 7). The DOC has therefore satisfied all of the requirements and properly invoked the executive privileges.

### ii. Government Documents Privilege

The DOC relies *United States v. Reynolds*, 345 U.S. 1 (1953), as the authority for the DOC's claimed government documents privilege. (*See* Docket No. 140 at 9). *Reynolds* addressed a formal claim of privilege lodged by the Secretary of the Air Force in response to the plaintiffs' request for an accident investigation report of the crash of a military aircraft carrying civilians.

*Reynolds*, 345 U.S. at 2-6. In that case, the Supreme Court held that there is a privilege against revealing military and state secrets. *Id.* at 6-7.

At no point in Chief Justice Vinson's opinion is there any mention or recognition of a "government documents privilege." Rather, the DOC's characterization of the "government documents privilege," as a safeguard against disclosure of security-related information and as an absolute privilege, invulnerable to any showing of necessity on the part of the party seeking disclosure, is a fitting description of the military and state secrets privilege, which was the actual product of *Reynolds*. The DOC's reference to "security concern[s]" supports the Court's view that the DOC was indeed referring to the state secrets privilege in its response to Chisler's motion. (*See* Docket No. 140 at 9).

Likewise, the DOC's reliance upon the procedural requirements of *Reynolds* justifies the conclusion that the DOC is attempting to assert the state secrets privilege. The DOC cites *Reynolds* for the procedural invocation requirements, despite the fact that *O'Neill* expressly extended the same requirements to other forms of executive privilege in the Third Circuit. *See O'Neill*, 619 F.2d at 226. The Court finds the DOC's sole reliance upon *Reynolds* telling.

Having concluded that the DOC is attempting to rely upon the state secrets privilege adopted by the Supreme Court in *Reynolds*, this Court now turns to the question of whether the state secrets privilege is applicable here. "[T]he state secrets privilege must be asserted by the United States." *El-Masri v. United States*, 479 F.3d 296, 304 (4th Cir. 2007) (citing *Reynolds*, 345 U.S. at 7). The privilege "may not be used to shield any material not *strictly necessary to prevent injury to national security*; and, whenever possible, sensitive information must be disentangled from nonsensitive information to allow for the release of the latter." *Ellsberg v. Mitchell*, 709 F.2d 51, 57 (D.C.Cir. 1983) (emphasis added).

Here, the Court sees no pressing matter of national, or even state, security. The requested information pertains to an investigation of a suicide allegedly the result of workplace violence and harassment. (*See* Docket No. 139 at 2). Even if the facts contained within the documents are offensive to the government, i.e. they show that there *is* a custom, practice, or policy of workplace violence and harassment, the disclosure of such will not hamper the function of government. In fact, it seems more likely that the disclosure of such information will *improve* the function of government by allowing such a custom to be eliminated. It is good public policy and in the interests of the tax payer to have properly run government institutions. The Court therefore sees no reason to apply to "government documents privilege" to enable the DOC to avoid disclosure of the requested report.[2]

### iii. Deliberative Process Privilege

The deliberative process privilege is the most frequently invoked form of executive privilege. *In re Sealed Case*, 121 F.3d at 737. Even so, "the deliberative process privilege, like other executive privileges, should be narrowly construed." *Redland Soccer Club, Inc. v. Department of Army of U.S.*, 55 F.3d 827, 856 (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C.Cir. 1980)).

Even after establishing that this privilege has been appropriately invoked, a district court also must be satisfied that a privilege claimant has satisfied two elements. *See Redland Soccer*

---

[2] Even if the information was of such critical value as to result in the proper invocation and application of the state secrets privilege, the Court notes that "nonsensitive information" must be from the "sensitive information." *Ellsberg*, 709 F.2d at 57. Based on the security concerns raised by the DOC in invoking the privilege, the Court would be compelled to find that the only sensitive information contained in the requested documents are the names of the witnesses and of the victim. This sensitive information could easily be "disentangled" from the rest of the information by way of redaction.

*Club*, 55 F.3d at 854. First, a district court must determine whether the communications are in fact privileged. *Id.* Next, the court must balance the parties' interests. *Id.*

With respect to the first element, the deliberative process privilege permits the government to withhold documents containing "confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice." *In re Grand Jury*, 821 F.2d 946, 959 (3d Cir. 1987) (citing *NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 150-54 (1975)). "[T]he ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions." *Sears Roebuck*, 421 U.S. at 151.

The burden lies with the government to show that the privilege applies. *Id.* (citing *Schreiber v. Society for Savings Bancorp.*, 11 F.3d 217, 221 (D.C. Cir. 1993)). To meet this burden, the government must present more than "a bare conclusion or statement" that the documents sought are privileged. *Redland Soccer Club*, 55 F.3d at 854. The proper exercise of this privilege falls within the court's purview: it must be the court, not the agency, which determines that availability of the privilege. *See id.*

The privilege does not extend to factual information, even when that information is contained within an otherwise protectable document. *See In re Grand Jury*, 821 F.2d at 959; *Paisley v. C.I.A.*, 712 F.2d 686, 699 (D.C. Cir. 1983). Nor does the privilege extend to "communications made subsequent to an agency decision." *Redland Soccer Club*, 55 F.3d at 854 (citing *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993)).

If a court is satisfied that the privilege should apply to the relevant information, the court must next balance the parties' interests. A court's considerations should include at least: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the

litigation; [and] (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *Redland Soccer Club*, 55 F.3d at 854 (quoting *First Eastern Corp.*, 21 F.3d at 468 n.5).

Turning to the instant case, the deliberative process privilege only extends to "confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice." *In re Grand Jury*, 821 F.2d at 959. It is hard to imagine that the totality of the investigation documents for which Chisler seeks production is entirely deliberative. Indeed, much of the report is factual narrative. It is therefore unlikely that the DOC has appropriately claimed the deliberative process privilege.

Even if the claim is appropriate in a general sense, the underlying factual information is not protected by the privilege. *Id.* The DOC's claim to the privilege with respect to the underlying facts is therefore inappropriate. Given that the DOC interviewed twenty-one employees and produced a report of approximately one hundred and ninety pages, it seems likely that there is far more factual information contained within the requested document than the mere facts of A.H.'s suicide and a letter claiming that sexual harassment may have been a contributing factor. (*See* Docket No. 139 at 2) (summarizing the unredacted factual information contained in the redacted version of the requested document). It would appear that the remaining factual information should be produced in some manner.

With respect to the remaining information, the Court must engage in the balancing test as required by *Redland Soccer Club*. Again, the Court's considerations must include the relevance of the information, the availability of other evidence, the "seriousness" of the litigation and the issues involved, the role of the government in the litigation, and the possibility of "future timidity" of government officials who recognize that their secrets may be divulged. *Redland*

*Soccer Club*, 55 F.3d at 854. The relevance of this information has already been established. *See supra* Part IV.a. Similarly, there appears to be no other evidence that speaks to the DOC's reaction to the allegations of sexual harassment and mistreatment in the A.H. situation. These two elements weigh in favor of disclosure of the requested document.

The litigation is serious. If Chisler prevails on his claim, he will have established a custom, practice, or policy of workplace violence at the DOC. He alleges that he was attacked and hog-tied, and that such activity is part of a custom or practice at the DOC (Docket No. 21 at ¶¶ 3, 4). Chisler asserts that the document for which he requests disclosure also demonstrates a custom or practice of similar behavior and that the DOC condoned the same. If true, these allegations can and should have serious repercussions within the Pennsylvania government. This factor, too, weighs in favor of disclosure.

Even though the DOC is not a party to the litigation, it is the DOC's alleged inaction, if proven true, that gave rise to the current suit. The DOC's "role" in this litigation is therefore a critical one. Without the alleged inaction, some of which may be corroborated by the evidence contained within the requested documents, there would be no suit at all. The government's role in the litigation therefore weighs in favor of disclosure.

Finally, the Court looks to the possibility of future timidity if the requested information is disclosed. Here, it is worth noting that some of the relevant information has been disclosed elsewhere. (*See* Docket Nos. 155-1; 155-1A). However, the most relevant facts pertaining to the DOC's response to its investigation have not been disclosed. The likelihood of increased timidity seems minimal here, where the only new evidence that needs to be disclosed specifically relates to the actual alleged events and possible discipline, not the identities of the witnesses. It seems unlikely that the release of a properly redacted or sealed copy of the investigation will have the

dramatic chilling effect painted by Secretary-Designee Wetzel. (*See* Docket No. 140-2 at ¶ 7). This final factor, like all the others, weighs in favor of disclosure.

## IV. PRIVACY OF THE ESTATE

As the Court has observed, the requested report addresses an investigation over the suicide of a DOC employee. (*See* Docket No. 139 at 2). The Court is cognizant of the risk to the estate that may arise if the full document is disclosed to the public. The Court notes, however, that Chisler only requests production of "interviews, recommendations and discipline imposed." (Docket No. 138 at 5). The Court believes that this request can be satisfied by production of the requested investigation documents under seal. Such production will satisfy Chisler's request for information while avoiding undue invasion of the privacy rights of A.H.'s estate. It will also produce the added benefit of limiting the disclosure of evidence that gives rise to Secretary-Designee Wetzel's concerns. (*See* Docket No. 140-2 at ¶ 7).

## V. CONCLUSION

The evidence which Chisler seeks to have the DOC produce is clearly relevant. Because the Court finds that the DOC has failed to demonstrate an applicable privilege under the present circumstances, the Court determines that Chisler's motion to compel production of a copy of certain documents, Docket No. [138], is GRANTED, with the limitation that the document be produced under seal, by 5:00 p.m. on June 27, 2011. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date: June 16, 2011
cc/ecf: All counsel of record